IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| FLIP FACE U.S.A., LLC, a Florida Limited Liability Company, and FLIP FACE, INC., a Forgien Corporation,<br><br>Plaintiffs,<br>v.<br><br>ALEXANDRIA MOLDING, INC., a Washington Corporation, and MOULURE ALEXANDRIA MOULDING, INC., a Canadian Corporation,<br><br>Defendants. | CIVIL ACTION NO.<br>1:15-cv-00883-MHC<br><br>JURY TRIAL DEMANDED |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS TO THE SPECIAL MASTER'S REPORT AND RECOMMENDATION REGARDING CLAIM CONSTRUCTION**

Plaintiffs, FLIP FACE U.S.A., LLC and FLIP FACE, INC., by and through the undersigned, hereby file this Response to Defendants', ALEXANDREA MOULDING, INC. AND MOULURE ALEXANDREA MOULDING, INC. Objection, [*see* Dkt. No. 212], to the Special Master's Report and Recommendation Regarding Claim Construction ("R&R"), [*see* Dkt. No. 207].

### INTRODUCTION

On November 15, 2018, the Parties presented to the Special Master their alternate views on the proper definition of five disputed claim terms. On January

28, 2019, the Special Master issued the R&R construing all of said terms and, in doing so, adopted Plaintiffs' proposed definitions for two of the five terms, *e.g.*, "inversely symmetrical" and "same appearance." *Compare* [Dkt. No. 207, at 32-33] *with* [Dkt. No. 149, at 17-19, 22-23]. For a third term – "proportionally of a same size" – the Special Master recommended a slightly reworded version of Plaintiffs' proposed definition. *Compare* [Dkt. No. 207, at 33] *with* [Dkt. No. 149, at 23-25]. Defendants do not complain about any of these three terms.

Surprisingly, after the Parties filed their Joint Claim Construction Statement, [*see* Dkt. No. 132], after Defendants filed their Claim Construction Brief, [*see* Dkt. No. 148], and after Defendants filed their Responsive Claim Construction Brief, [*see* Dkt. No. 154], where, at every step, Defendants voiced their disagreement with Plaintiffs' proposed definition the term "inversely mirrored", Defendants suddenly complain that the Special Master errored, *not by failing to adopt Defendants' proposed definition*, but by **not** adopting part of **Plaintiffs'** proposed definition. *See* [Dkt. No. 212, at 2, 17]. In doing so, Defendants provide a lengthy, confusing, and misguided argument, that is mostly focused on the Special Master's use of the phrase "wiggle room" to explain its definition. *See, e.g., id.* at 5 [Defendants claiming "the Special Master improperly added 'wiggle room' to the term"]. In the same fashion,

P a g e | 3

Defendants also complain about the Special Master's definition of "inversely symmetrical," but dedicate just two sentences to said term. *Id.* at 17-18.

As part of its argument, Defendants propose two *new* alternative constructions for "inversely mirrored" and "inversely symmetrical." Notably, these newly proposed constructions include a key portion of the constructions provided by Plaintiffs, and adopted by the Special Master. Specifically, Defendants finally agree with Plaintiffs that the "naked eye" test is the appropriate method of measuring whether two things are "inversely mirrored" or "inversely symmetrical." *Id.* That said, and for the reasons discussed below, the remainder of Defendants' *new* proposal is incongruent with this acknowledgement.

Upon acknowledging the appropriateness of the "naked eye" test, Defendants unnecessarily endeavor to define (i) whose "naked eye" is to be used, and (ii) at what physical location the accused infringing molding piece(s) are to be viewed. *See* [Dkt. No. 212, at 18]. Specifically, Defendants believe that the vantage point considered (*i.e.*, the "naked eye" test) should be that of a Person of Ordinary Skill in the Art ("POSITA"), and that the test need not be, as the Special Master found, performed "when the two profiles are installed in an abutting relationship against each other on a ceiling/wall." *Id.* Problematic of this approach however, Defendants' newly proposed approach leaves several unanswered questions that do not find support

P a g e | 4

within the pages of either U.S. Patent No. 8,919,059 ("the '059 Patent") and/or U.S. Patent No. 8,516,758 ("the '758 Patent"), the prosecution histories of those patents, or the extrinsic evidence of record. For example, if, as Defendants advocate, the crown moulding were not viewed in its intended location, which is at the junction between a ceiling and a wall, the jury will need to be instructed as to *where* and at *what distance* the "naked eye" viewer must stand in relation to the crown moulding he/she is viewing. Further, the jury will need to be instructed as to the appropriate configuration in which he/she must view the two pieces of crown moulding. In other words, Defendants' proposed definitions leave it up for endless debate whether the jury is supposed to view just one piece of crown moulding and flip it over repeatedly in their hand to compare the front to the back; or, whether two pieces are to be provided and matched against each other and, if so, whether those two pieces are supposed to be connected in a straight configuration, an inside 90° corner, or an outside 90° corner, and how far away is the viewer supposed to stand to view the moulding. After all, minor imperfections might be visible in one's hands while close to their eyes, but completely invisible once the product is many feet away from the viewer. Defendants do not offer any guidance and, as explained below, debating these issues is unnecessary as the Special Master specifically addressed these concerns in his Report and Recommendation, and supported his conclusions with

P a g e | 5

competent and substantial evidence, all found within the patents themselves. *See generally* [Dkt. No. 207].

Finally, for the term "inversely mirrored," Defendants complain the Special Master's definition should have included the modifier "exactly." Defendants submit that such is required to provide some level of exactitude before infringement can be determined. As the Special Master noted, however, even Defendants recognize that there is no such thing as "exactness" in the manufacturing of crown moulding. *See* [Dkt. No. 207, at 18] [observing Defendants' acknowledgment that "both sides agree that manufacturing may result in some minor…variations between two otherwise identical pieces of moulding"]. Therefore, the Special Master's carefully considered definitions should be adopted by this Court.

## RESPONSE TO DEFENDANTS' ARGUMENTS
### DISPUTED CLAIM TERMS

### I. "Inversely Mirrored"

The Special Master's definition of "inversely mirrored" does not incorporate the modifying word "exactly," which is the core of Defendant's current opposition. [Dkt. No. 207, at 32]. Defendants thus ask this Court to make three amendments to the Special Master's recommended definition, said changes being indicated in the chart below, where the bold/underlining indicates words Defendants propose *to add*,

and where the bold strikethroughs indicate words which Defendants propose *to delete* from the Special Master's reasoned construction:

| Construed Term | Special Master's Construction | Defendants' *Newly* Proposed Construction |
|---|---|---|
| "Inversely Mirrored" | Two lineal crown moulding profiles reversed 180° about a reference point and sufficiently similar to each other to appear to the naked eye to match in appearance when the two profiles are installed in an abutting relationship against each other on a ceiling/wall. | Two profiles reversed 180 degrees about a reference point and sufficiently similar to each other to appear to the naked eye **of a POSITA** to **exactly** match in appearance ~~when the two profiles are installed in an abutting relationship against each other on a ceiling/wall~~. |

i.   **Defendants' Proposed Addition of a reference to "POSITA"**

Defendants first contend that the proper definition of "inversely mirrored" must contain reference to a POSITA. In other words, Defendants believe the claim definition should be amended to make clear that it is the POSITA's naked eye that must compare the two profiles of crown molding to each other. Plaintiffs disagree.

The Special Master specifically noted that "patents are 'not addressed to lawyers, or to the public generally,' but rather to those skilled in the relevant art." [Dkt. No. 207, at 9] [quoting *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 909 (2014)]. In fact, Section 112 of the Patent Act requires that the patent "shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any

**The Concept Law Group, P.A.**            6400 N. Andrews Ave., Suite 500
Patents | Copyrights | Trademarks            Fort Lauderdale, Florida 33309

P a g e | 6

person skilled in the art . . . to make and use the same." 35 U.S.C. § 112.  The Special Master provided a full analysis of what a POSITA is, and who that exact person would be in the case of the technology at issue here. [Dkt. No. 207, at 9-11] [Identifying a POSITA as someone who would not "lack the 'understanding that tolerances in machines and materials used to manufacture crown moulding leads to tolerances in the dimensions of the moulding pieces produced.'"].  The Special Master also observed that "[a] court construing a patent claim seeks to accord a claim the meaning it would have to a person of ordinary skill in the art." *Id.* at 9.

Consequently, because patent claims are written for, and interpreted by, POSITAs, and because the Special Master had a full appreciation of this fact, adding the phrase "of a POSITA" to the definition of "inversely mirrored," as Defendants advocate, is redundant and entirely unnecessary.  Therefore, Plaintiffs respectfully request that this Court deny Defendants' newly proposed amendment, as it is unnecessary, redundant, and would only serve as an additional layer of potential confusion for the jury.

### ii.  Defendants' Proposed "EXACTNESS" Requirement

Next, Defendants seek to insert the word "exact" into the definition of "inversely mirrored."  Defendants attempt to persuade this Court that such a proposal would be congruent with Plaintiffs' originally proposed definition on this claim

**The Concept Law Group, P.A.**        6400 N. Andrews Ave., Suite 500
Patents | Copyrights | Trademarks      Fort Lauderdale, Florida 33309

P a g e | 7

term. *See* [Dkt. No 212, at 5]. Not quite. Although Defendants are correct that the word "exact" was included within Plaintiffs' proposed definition of the term "inversely mirrored," Defendants ignore the remainder of Plaintiffs' entire definition, and thus overlook the context in which Plaintiffs used the word. Indeed, it is indisputable that Plaintiffs' <u>full</u> definition did not require the precision Defendants currently seek. That is because Plaintiffs' definition includes two other phrases – "to the naked eye" and "when the two profiles are installed in an abutting relationship against each other on a ceiling/wall" – both of which were adopted by the Special Master. [Dkt. No. 207, at 32]. Explained further, the inexact measurement of the naked eye, combined with the built-in distance between the naked eye and the intersection of a ceiling and a wall, builds in the "wiggle room" the Special Master was referencing, and which Defendants are feverishly trying to avoid. Thus, while Defendants suggest that Plaintiffs somehow agreed in prior briefing that *exactitude* was required for this definition, such is hardly the case, and the Special Master acknowledged this reality. *See, e.g.,* [Dkt. No. 207, at 23] [where the Special Master recognized that "there is no 'wiggle room' term available in Defendants' proposed construction" as Defendants' proposed definition required *exactness*, but observing that "Plaintiffs' proposed construction does contain the

**The Concept Law Group, P.A.**  6400 N. Andrews Ave., Suite 500
Patents | Copyrights | Trademarks  Fort Lauderdale, Florida 33309

P a g e | 8

following 'wiggle room' language: "…sufficiently similar to each other to appear to the naked eye to exactly match in appearance…"].

Defendants' motivations in their present proposal rises to the surface in light of the clarity on the Parties' prior positions, and the inappropriateness of their proposal is unmistakably revealed.  Specifically, Defendants have admitted to shaving off approximately one half the thickness of a dime from the uppermost profile feature of just one side of some of the crown moulding they are accused of infringing in this litigation. [Dkt. No. 155, at 1-3].  Because this "modification" was so insignificant, Defendants are desperately seeking claim construction that would ostensibly require a very high precision of *exactness* between two accused crown moulding faces.  It is this reason that Defendants urge a change in the Special Master's carefully derived definition of "inversely mirrored" to require two profiles that *exactly* match in appearance.  Defendants propose this modification despite the Special Master's conclusion that such is a completely unreasonable argument.  Indeed, the Special Master expressly noted that *even Defendants themselves* acknowledge there is no such thing as two "exactly" matching pieces of crown moulding. [Dkt. No. 207, at 25]["Defendants acknowledge that the manufacturing of those two profiles may result in some minor variation between them such that [they] may not exactly match in appearance."].

**The Concept Law Group, P.A.**  6400 N. Andrews Ave., Suite 500
Patents | Copyrights | Trademarks   Fort Lauderdale, Florida 33309

P a g e  | 9

Further, as Plaintiffs explained in their Response to Defendants' Opening Markman Brief ("Markman Response"), [*see* Dkt. No. 155], setting the definition of a claim term to "exactly matching" is highly problematic for an infringement analysis. If such certitude were required, this Court and, ultimately the jury, will require a standard for determining whether one thing is actually "exactly the same" as another thing. As explained, the Court would necessarily need to consider several additional and unnecessary factors, such as, but not limited to: (i) which instrument should be handed to the jury, *e.g.*, ruler, micrometer, cathetometer, caliper, electron microscope, magnifying glass, etc.; (ii) what distance is an acceptable variation for two things to still be "exactly matching," *e.g.*, 0 microns, 1 micron, 2 microns, 50 microns, 1/10 of an inch, etc.; and (iii) where in the patents is there support for such an incredible level of exactness before infringement can be found. *See* [Dkt. No. 155, at 3-4]. Despite Plaintiffs raising these concerns throughout this Claims Construction process, Defendants have yet to offer any solution or suggested guidance on any of the foregoing; rather, Defendants simply urge that *exactness* is a required feature. As a result, this Court would be left to speculate should it accept Defendants' request.

Notably, the Special Master observed that "the phrase 'match exactly' is found **only once** in each of the patents-in-suit and that is in the Background of the

Invention," which naturally refers to things *other than* the inventions of the '758 and '059 Patents.  [Dkt. No. 207, at 13][emphasis added].  The Special Master further found that "[t]here are **no other references** in either of the patents which limit the profile on both sides of the lineal crown-moulding to such an 'exactly matching' certitude as Defendants propose."  *Id.* [emphasis added].  Simply put, there is absolutely no support within the patents for Defendants' position on this third point.

For the foregoing reasons, Defendants' request is unworkable by the jury, wholly unsupported by the patents themselves, and should be rejected by this Court.  Such a rejection is thus respectfully requested.  The Special Master's Report and Recommendation should be fully adopted by this Court.

> iii. **Defendants' Proposed Deletion of the Special Master's verbiage, "*Two Profiles Are Installed In An Abutting Relationship Against Each Other On A Ceiling/Wall.*"**

Finally, and in connection with their attempted insertion of "exactly" into the definition of "inversely mirrored," Defendants also urge the complete removal of the portion of the infringement test that "the two profiles are installed in an abutting relationship against each other on a ceiling/wall" when two decorative profiles are being compared to one another.  This removal of language, presumably, brings the two pieces down from the ceiling and closer to the "naked eye" of the observer so that, as Defendants hope, the viewer will be more likely to notice

insubstantial differences between the moulding profiles. As explained in the preceding paragraph, however, this moves the requirements of infringement closer to the "exactly matching" precision that Defendants desire in order to have an argument to, hopefully, escape infringement. Fatal to this approach, however, the patents in-suit specifically and expressly state that the junction between the wall and the ceiling is precisely where the inventive moulding is used and, thus, should be observed during the infringement analysis. *See, e.g.,* [the '059 Patent, at col. 5, ln. 66 to col. 6, ln. 6]["the present invention includes the moulding having a first position with the top back chamfer portion adjacent to the ceiling and the bottom back chamfer portion adjacent to the wall. . . The moulding also has a second position with the top front chamfer portion adjacent to the wall and the bottom front chamfer portion adjacent to the ceiling"].

Based on the foregoing, it was sensible for the Special Master to have concluded that the vantage point of the viewer in an infringement analysis would be to look at crown moulding at the junction between the ceiling and the wall. Indeed, it is hard to envision a scenario where anyone would rip the moulding off the wall to inspect it to ensure the back side *exactly* matches the front side, as Defendants' position would promote. Such a theory would be ridiculous; yet, Defendants completely fail to provide the Court any rationale to explain why the invention

should be viewed in a location other than that expressly intended by the patents. And, similar to the inevitable result of inserting the word "exact" into the Special Master's definition, this requested deletion proposed by Defendants raises many additional questions, all pertaining to how the jury is supposed to compare the profiles to each other. For example, Defendants seem to advocate a test where a juror simply flips a single piece of moulding over in his/her hands to view and compare the profiles on either side. *See, e.g.,* [Dkt. No. 207, at 27][ where the Speciail Master recounts defense counsel saying, "I think this inversely symmetrical is really focusing on the need to look at these things and compare them once they are flipped 180 degrees" and "when you flip them and look at them they are substantially identical"]. But, why would that be the test? In other words, why would any viewer care how closely the backside of a particular piece of moulding matches the front side, when s/he can only see one side at a time? They wouldn't, which is precisely the reason such an up-close analysis is not contemplated by the patents in-suit. The only time the similarity between the two sides would matter, is when there are two pieces matched up against one another. And, the only place two pieces will be permanently matched up against each other is in an installed position, which is at the junction between the ceiling and wall – a reality the Special Master captured in his definition. For this reason, Defendants' insistent request to remove

**The Concept Law Group, P.A.**  6400 N. Andrews Ave., Suite 500
Patents | Copyrights | Trademarks  Fort Lauderdale, Florida 33309

P a g e | 13

"the two profiles are installed in an abutting relationship against each other on a ceiling/wall" from the Special Master's claim definition should be rejected.

## II. Inversely Symmetrical

The Special Master provided a definition of "inversely symmetrical" that very closely follows his proposed definition of "inversely mirrored." *See* [Dkt. No. 207, at 32-33]. The chart below shows the subtle differences between the two definitions, said differences being indicated in bold and underline:

| Special Master's Construction Of "Inversely Mirrored" | Special Master's Construction Of "Inversely Symmetrical" |
|---|---|
| Two **lineal crown moulding** profiles reversed 180° about a reference point and sufficiently similar to each other to appear to the naked eye to **match** in appearance when the two profiles are installed in an abutting relationship against each other on a ceiling/wall. | Two profiles reversed 180° about a reference point and sufficiently similar to each other to appear to the naked eye to **correspond** in **size, shape, and** appearance when the two profiles are installed in an abutting relationship against each other on a ceiling/wall. |

Unsurprisingly, Defendants' requested modifications of the Special Master's definition for "inversely symmetrical" are virtually identical to their requested modifications to the term "inversely mirrored." More specifically, Defendants ask this Court to make two amendments to the Special Master's recommended definition, said changes being indicated in the chart below, and again where the bold/underlining indicates words Defendants propose *to add*, and where the bold

strikethroughs indicate words which Defendants propose *to delete* from the Special Master's reasoned construction:

| Construed Term | Special Master's Construction | Defendants' *Newly* Proposed Construction |
|---|---|---|
| "Inversely Symmetrical" | Two profiles reversed 180° about a reference point and sufficiently similar to each other to appear to the naked eye to correspond in size, shape, and appearance when the two profiles are installed in an abutting relationship against each other on a ceiling/wall. | Two profiles reversed 180° about a reference point and sufficiently similar to appear to the naked eye **of POSITA** to correspond in size, shape and appearance ~~when the two profiles are installed in an abutting relationship against each other on a ceiling/wall~~. |

Accordingly, once distilled, Defendants' relevant position against the Special Master's definition of "inversely symmetrical" is narrowed down to the same two criticisms it has raised concerning the Special Master's definition of "inversely mirrored." Namely, Defendants request the following two proposed edits to the Special Master's definition of "inversely symmetrical": (1) to insert "POSITA" into the Special Master's claim definition; and (2) to remove from the Special Master's definition the language "when the two profiles are installed in an abutting relationship against each other on a ceiling/wall." Both invitations should be declined for the same reasons delineated in Section I above, and the Special Master's recommended definitions should be adopted in full by this Court.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request this Court endorse and adopt the Special Master's recommended claim term definitions.

**Dated:   March 15, 2019**.

>Respectfully submitted,
>
>The Concept Law Group, P.A.
>*Attorneys for the Plaintiffs*
>6400 South Andrews Avenue, Suite 500
>Fort Lauderdale, Florida 33309
>T: (754) 300-1500
>F: (754) 300-1501
>
>By:   /s/ Scott D. Smiley /
>Scott Smiley, Esq. (Admitted *Pro Hac Vice*)
>Scott@ConceptLaw.com
>Alexander Brown, Esq. (GA Bar No.:  902761)
>ABrown@ConceptLaw.com

## CERTIFICATE UNDER L.R. 7.1D, N.D. Ga.

Pursuant to Northern District of Georgia Local Rule 7.1D, Plaintiffs' counsel hereby certifies that the above and foregoing is a computer document prepared in Times New Roman (14 point) font in accordance with Local Rule 5.1B.

**The Concept Law Group, P.A.**   6400 N. Andrews Ave., Suite 500
Patents | Copyrights | Trademarks   Fort Lauderdale, Florida 33309

P a g e | **16**

P a g e | 17

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on March 15, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: /s/ Scott D. Smiley /

**The Concept Law Group, P.A.**  6400 N. Andrews Ave., Suite 500
Patents | Copyrights | Trademarks  Fort Lauderdale, Florida 33309

P a g e | **17**