**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| FLIP FACE U.S.A., LLC, et. al., | |
| Plaintiffs, | **CIVIL ACTION NO.** |
| v. | **1:15-cv-00883-MHC** |
| ALEXANDRIA MOULDING, INC., et. al., | |
| Defendants. | |

**MOTION TO INTERVENE AND ESTABLISH AND ENFORCE AN**
**EQUITABLE CHARGING LIEN AGAINST SETTLEMENT PROCEEDS**

The undersigned and previous counsel for Plaintiffs, Mark C. Johnson ("Undersigned"), hereby files this Motion seeking an Order from this court to intervene (to the extent needed) in this action to establish an equitable charging lien ("Lien") against settlement proceeds recovered by Plaintiffs in the underlying action and enforcing said Lien, pursuant to O.C.G.A. § 15-19-14, by requiring Plaintiffs' counsel to deposit 40% of the settlement proceeds into the Court's registry for equitable disbursement pursuant to said Lien.

## MEMORANDUM OF LAW AND FACT

### I. RELEVANT BACKGROUND

After spending over 800 uncompensated hours litigating this case for the benefit of Plaintiffs, this Motion is filed to combat against the apparent monetary greed of Plaintiffs and their current counsel by failing to pay (or offer to pay) *any* of

said hours.  More specifically, the genesis behind this Motion is Plaintiffs' failure (on behalf of Plaintiffs' current firm, The Concept Law Group, P.A. ("CLG"), and principals of CLG, Alexander Brown ("Brown") and Scott Smiley ("Smiley")) to compensate Undersigned for his time spent towards actively and significantly litigating this case to Plaintiffs' benefit while a partner at CLG.

It is important to note that since Undersigned's initial employment with CLG, Undersigned was never a salaried employee.  Rather, Undersigned was compensated based on a percentage of time billed by Undersigned on a matter or time billed by others at CLG, if the matter billed on was "originated" by Undersigned.  Since at least March of 2014, and also while a partner at CLG, Undersigned began working with Plaintiffs as it related to prosecuting Plaintiffs' patent applications.  To that end, Undersigned personally and successfully argued to obtain one of the principal patents utilized in the underlying case, i.e., U.S. Patent No. 8,919,059.  Because of Undersigned's extensive knowledge of Plaintiffs' technology and Undersigned's litigation experience, Brown (albeit while employed with his previous firm at the time Tripp Scott, P.A.) and Smiley (Undersigned's partner at the time) approached Undersigned with a compensation arrangement, whereby Undersigned would be entitled to reimbursement of 46% of Undersigned's billable hours associated with the underlying case, plus 15% of any recovery of CLG's profit in the case after Undersigned's  attorney's fees have been paid out.  This compensation arrangement

was accepted by Undersigned and Undersigned began rendering services toward furthering this case. Plaintiffs also became aware that Undersigned was not being compensated for his time working on this case, but rather that Undersigned's compensation was dependent on Plaintiffs' success in recovering damages in the underlying case.

In furtherance of Undersigned's compensation arrangement, Undersigned began expending significant time toward furthering the litigation in this case, wherein such efforts included, but are not limited to, (1) conducting pre-suit investigation and claim evaluation, (2) evaluating pre-suit facts and documents, (3) drafting of the complaint, (4) reviewing and drafting discovery, including multiple interrogatories, requests for production, and document productions and categorization, (5) conducting multiple meet-and-confer discovery meetings and communications, (6) reviewing, drafting, and defending multiple motions, including Defendants' motion for judgment on the pleadings, Plaintiffs' motion for sanctions, and Defendants' motions for summary judgment, (7) preparing for and attending court hearings, (8) reviewing and drafting patent-related discovery and pleadings, and (9) preparing for and conducting multiple depositions, including that of Plaintiffs' 30(b)(6) representative. As such, Undersigned, who was referred to by

Smiley as CLG's "litigation footstool" for this case, spent over 800 unpaid hours[1] principally handling a predominant portion of this case.

Undersigned's efforts significantly advanced the litigation of this case and led to several favorable orders to Plaintiffs.  To that end, Undersigned was praised for his work repeatedly and was significantly, and in some instances, solely, relied upon to advance litigation of the underlying case[2].  As such, it was and is (despite the existence of apparent monetary greed) the understanding and expectation that Undersigned was to be paid for his time billed upon resolution of this case.  See, for example, the following e-mail communication between Undersigned and Smiley acknowledging Undersigned's expected reimbursement and recovery upon resolution of this case:

**From:** Scott Smiley
**Sent:** Tuesday, October 04, 2016 11:44 AM
**To:** Mark Johnson
**Subject:** RE: Sept Bonus

A couple things to consider:

Your income went up last year (nicely) and Alex and I suffered significant pay cuts from the previous year. I note it went up even though you are yet to be paid on Flipface, which was a significant part of your year.

While having a written agreement is not required to establish or enforce an equitable attorney fee lien (as discussed *infra*), the written contingency agreement with

---

[1] To the extent needed by this Court for resolution of this Motion, CLG and Undersigned have detailed records of Undersigned's time that was recorded via a software application called "Timeslips."

[2] If the Court desires, Undersigned can produce emails relating to this case praising the Undersigned for his quality of work and advancing the underlying case.  Undersigned believes these emails do not involve attorney-client communications and/or said emails will be redacted to remove any potential attorney-client communications.

Plaintiffs in this case contemplated Undersigned's compensation upon resolution of this case.

More specifically, on or around April 3, 2015, Plaintiffs signed an agreement retaining and employing CLG, *including its attorneys*, to represent Plaintiffs in the claims brought against Defendants ("Agreement").  This contingency Agreement explicitly provided that Plaintiffs agreed "to pay ***its attorneys*** a contingency fee of Forty Percent (40%) of the value of any Gross Recovery." (emphasis added and a snippet of said Agreement is reproduced below).

> As compensation for their services, the Client agrees to pay its attorneys a contingency fee of **FORTY PERCENT (40%)** of the value of any Gross Recovery. Any out-of-pocket fees and expenses that actually have been paid by the Client will be deducted from any Gross Recovery before the aforementioned percentages apply.  However, in the event costs are advanced by the Firm, they will be deemed part of the Gross Recovery and therefore not deducted before the aforementioned percentages apply. The Client understands that they are responsible to pay costs as billed on a monthly basis.

To the extent CLG (and inherently its attorney(s)) withdrawal, Plaintiffs also agreed to grant a lien for any unpaid attorneys' fees.

> Client acknowledges that due to the contingent nature of this representation, Client's failure to cooperate fully in enforcement activities, mediation or settlement negotiations, or to provide assistance, information or documentation to the Firm, or Client's engaging in conduct that otherwise hinders the Firm's ability to represent the Client effectively, may be a reason for the Firm to withdraw from the representation. Client further understands that such withdrawal will not terminate the Contingency Fee obligations specified in this Agreement, and Client grants a lien and any outstanding claims, litigation or settlement for any reason to the extent of the Contingency Fee and the amount of any outstanding unpaid Attorneys' Fees and Expenses incurred by the Firm prior to such withdrawal.

As such, after Undersigned withdrew from this case and after resigning with CLG, Undersigned filed a notice of asserting an equitable charging lien against CLG and Plaintiffs ("Notice") with this Court on April 24, 2017. Dkt. No. 163.  The

5

Notice and Lien was never contested by Plaintiffs, CLG, Brown, or Smiley until almost 2.5 years later, or September 5, 2019[3].  As such, Undersigned is entitled to equitable reimbursement for his time that is not to exceed 40% of CLG's portion of Plaintiffs' recovery in the underlying proceeding.

## II.    LEGAL STANDARD AND BASIS TO INTERVENE

The rules provide intervention of right in an action to "anyone . . . who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  Fed. R. Civ. P. 24(a)(2).  Undersigned filed a stipulated withdrawal of counsel in this case on April 28, 2017 and, while still noted as an attorney of record in this case, Undersigned's intervention to enforce the Lien is appropriate in these circumstances.  Dkt. No. 166; N. Am. Med. Corp. v. Axiom Worldwide, Inc., 06-cv-1678-JEC, 2011 LEXIS 105870, at *12 (N.D. Ga., Sept. 19, 2011), vacated in part on other grounds in 2012 LEXIS 198127 (N.D. Ga. Feb. 3,

---

[3] On September 5, 2019, CLG served Undersigned with, what Undersigned believes to be, an unsupported and unfounded "Motion to Strike Charging Lien and Motion for Sanctions pursuant to Fed. R. Civ. P. 11."  Undersigned believes this was a clear, unprofessional, and improper attempt by CLG to deter Undersigned from seeking judicial recourse from this Court, wherein the alleged basis for said request for sanctions was based on lack of "evidentiary support" for filing the Lien. As described herein, however, the Notice of asserting the Lien was and is fully justified and within the rights of Undersigned.  To the extent said Rule 11 motion is filed, and as will be addressed in any response thereto, Undersigned respectfully requests this Court also award Undersigned its fees and costs associated with this Motion as a sanction against Plaintiffs and its counsel.

2012) ("intervention is generally recognized as an appropriate means of pursuing a lien on the proceeds of litigation in which an attorney has participated").

## III.   LEGAL STANDARD AND BASES TO ESTABLISH AND ENFORCE UNDERSIGNED'S EQUITABLE ATTORNEY FEE LIEN

"An attorney lien arises upon the attorney's employment and is perfected at the time of the ultimate recovery of the judgment by the client." Lipton v. Warner, Mayoue & Bates, PC, 492 S.E.2d 281, 283 (Ga. App. 1997) (citing Ramsey v. Sumner, 211 Ga. App. 202, 204, 438 S.E.2d 676 (1993). "No question exists that an attorney is entitled to a fee that has been earned." Ellerin & Associates v. Brawley, 263 Ga. App. 860, 589 S.E.2d 626, 628 (2003) (citing O.C.G.A. § 15-19-14). "Since a lien for attorney's fees arises when the attorney files the action, 'a settlement of the action . . . does not defeat the lien of the attorney for his or her fees'". Albert v. Am. Family Ins. Co., No. 14-cv-1112-ELR-JKL, 2017 LEXIS 216280, at *10 (N.D. Ga. Jan. 9, 2017) (quoting In re Estate of Estes, 317 Ga. App. 241, 242, 731 S.E.2d 73 (2012)). "For purpose of an attorney's lien filed under Georgia law, the measure of damages is *quantum meruit.*" Brown v. Global Emp't Sol., Inc., 236 F. Supp. 3d 1299, 1307 (N.D. Ga. Feb. 17, 2017). Although there was a written agreement requiring Plaintiffs to pay Undersigned, *supra*, the existence of a written agreement is not required to enforce an equitable attorney fee lien. See id. at 1309.

In the instance case, there is no dispute that Undersigned was significantly involved in litigating this case with the consent of (and on the behalf of) the Plaintiffs. <u>Supra</u>. There is also no dispute that a settlement was reached in the underlying case, wherein a benefit was derived to Plaintiffs and their current counsel. <u>See</u> Dkt. No. 230. Whether Undersigned withdrew from the above-captioned case and resigned from CLG before the case resolved is also immaterial and/or irrelevant for resolution of Undersigned's attorney fee lien.[4] <u>See Albert</u>, 2017 LEXIS 216280, at *10; <u>Brown</u>, 236 F. Supp. 3d at 1308–09 (after withdrawing from client's case, the Court awarded fees against plaintiff pursuant to an attorney fee lien for time spent by a potentially unlicensed attorney who plaintiff did not expressly agree to have work on his case); <u>Tolson Firm, LLC v. Sistrunk</u>, 332 Ga. App. 324, 324–25, 772 S.E.2d 416, 628 (2015); <u>Kirschner & Venker, P.C. v. Taylor & Martino, P.C.</u>, 277 Ga. App. 512, 513, 627 S.E.2d 112 (2006) (permitting a discharged co-counsel in a case to recover under a lien against current counsel for services rendered to the client before he was discharged); <u>Eichholz Law Firm, P.C. v. Tate Law Group</u>, 310 Ga. App. 848, 852–53, 714 S.E.2d 413 (2011) (same).

---

[4] <u>See, e.g.</u>, <u>Nelson & Hill, P.A., v. Wood</u>, 245 Ga. App. 60, 537 S.E. 670, 676 (Ga. Ct. App. 2000) (after the federal district court awarded attorneys' fees for two attorneys of a firm against its former client in *quantum meruit*, the court of appeals of Georgia affirmed the lower court's dismissal of the firm's second *quantum meruit* action against its former client, stating that said action "may lie in contract"). However, as referenced herein, payment pursuant to this Motion does not sound in contract, but rather in equity.

Specifically, in <u>Tolson</u>, a resigning associate took a client from his former firm and, after filing a lawsuit for said client, the appellate court affirmed the trial court's award of attorneys' fees for pre-suit work for said client as O.C.G.A.§ 15-19-14 "affords protection to former counsel who performed legal work for a client in anticipation of filing a lawsuit, even if successor counsel ultimately filed the suit." 332 Ga. App. at 329.  The court also held that "nothing in the statutory language restricts its application to a limited class of attorneys who worked on the lawsuit when it was filed." <u>Id.</u>  Additionally, the court held that the attorney fee lien statute:

> [A]pplies **nonrestrictively to "attorneys at law"** and thus is broad enough to encompass those attorneys who conducted legal work for a client in anticipation of a lawsuit that ultimately is filed on behalf of the client by a different attorney. Any other result would be inconsistent with the principle that liens exist to ensure that an attorney is compensated for the "fruits of [his] labor and skill … whether realized by judgment or decree, or by virtue of an award, or in any other way, so long as they are the result of his exertions. . . . [and] does not differentiate between classes of "attorneys at law" who have worked on a matter for a client who can file and enforce a lien on an action for money, and we decline to engraft such a limitation upon the statute.

<u>Id.</u> (emphasis added).

9

Again, while a contract between Undersigned and Plaintiffs is not a prerequisite to establish and enforce the Lien, Undersigned acknowledges that the reasonable value for Undersigned's services recoverable to Undersigned should not exceed the 40% of Plaintiffs' recovery (which the most recoverable under the Agreement), i.e., Undersigned is not claiming or seeking reimbursement of any amounts that exceed 40% of Plaintiffs' overall recovery. <u>See</u> <u>Brown</u>, 236 F. Supp. 3d at 1310 (awarding fees to withdrawing counsel less than 40% of recovery pursuant to the engagement agreement). Therefore, out of equity, Undersigned should be reasonably compensated for said time.

## **<u>RELIEF REQUESTED</u>**

**WHEREFORE**, Undersigned respectfully requests this Court enter an Order (1) granting attorney Mark C. Johnson, to the extent needed, intervention in this action, (2) establishing an equitable charging lien ("Lien") against settlement proceeds recovered by Plaintiffs in the underlying action, (3) enforcing said Lien by requiring Plaintiffs' current counsel to deposit 40% of the settlement proceeds into the Court's registry for equitable disbursement, and (4) setting an evidentiary hearing or protocol to evaluate and determine the a reasonable value for Undersigned's services pursuant to said Lien, and/or (5) any other relief this Court deems just and proper.

**Dated:   September 20, 2019**.

Respectfully submitted,

By:    s/ Mark C. Johnson /
       Mark Johnson, Esq.
       MJ@JohnsonDalal.com

## **CERTIFICATE UNDER LR 7.1D, NDGa**

Pursuant to Northern District of Georgia Local Rule 7.1D, Undersigned counsel hereby certifies that the above and foregoing is a computer document prepared in Times New Roman (14 point) font in accordance with Local Rule 5.1B.

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on September 20, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By:   s/ Mark C. Johnson /
      Mark C. Johnson, Esq.
      Florida Bar No. 84365