# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| FLIP FACE U.S.A., LLC, et. al., | |
| Plaintiffs, | CIVIL ACTION NO. |
| v. | 1:15-cv-00883-MHC |
| ALEXANDRIA MOLDING, INC., et. al., | JURY TRIAL DEMANDED |
| Defendants. | |
| - and - | |
| MARK C. JOHNSON, | |
| *Proposed* Intervenor. | |

## PLAINTIFFS' REPLY TO THE RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE THE CHARGING LIEN FILED BY PROPOSED INTERVENOR

FLIP FACE U.S.A., LLC and FLIP FACE, INC. (collectively "Plaintiffs"), hereby serve this Reply to the Response in Opposition filed by *Proposed* Intervenor, MARK C. JOHNSON (hereinafter "Mr. Johnson"), [Dkt. No. 236], to the Motion to Strike Charging Lien filed by Plaintiffs, [Dkt. No. 234], and, in support thereof, state as follows:

**I.     INTRODUCTION**

Faced with over 100-years of case law discussed in Plaintiffs' Motion, Mr. Johnson failed to address the settled jurisprudence which dictates the striking of his invalid lien. Instead, after admitting that his resignation from The Concept Law Group ("TCLG"), *i.e.,* the firm retained by Plaintiffs at the onset of this litigation, was **voluntary**, Mr. Johnson now claims -- for the first time -- he was "effectively terminated or discharged" <u>following</u> his **voluntary** resignation. [Dkt. No. 236, at 7]. This sudden pivot belies the facts and is *unsustainable* under Georgia law.

Specifically, Mr. Johnson implausibly argues he was "terminated" simply because Plaintiffs "chose TCLG to continue to represent them in this case" following his **voluntary** resignation. [Dkt. No. 236, at 8]. In other words, Mr. Johnson's newfound argument suggests that his lien is valid because he was allegedly "terminated" when Plaintiffs declined to retain his new competing law firm over Plaintiffs' originally chosen counsel. Mr. Johnson now seems to appreciate the consequences of voluntarily withdrawing, and thus desperately searches for a path to legitimize his lien; but, neither the *undisputed* facts nor *unequivocal* law, support such an absurd position. Distilled to their core, the arguments advanced by Mr. Johnson starve of substance and are, in most instances, disturbingly frivolous. Each are addressed below, but Plaintiffs address Mr. Johnson's newest arguments first. In the end, Plaintiffs respectfully request that Mr. Johnson's lien be stricken.

## II. MR. JOHNSON SUDDENLY POSITS THAT HIS WITHDRAWAL WAS 'CONSENTED TO' BY PLAINTIFFS, OR HE WAS "EFFECTIVELY TERMINATED OR DISCHARGED"

Realizing the fate of his pursuit commanded by the century worth of case law cited in Plaintiffs' Motion, Mr. Johnson's newest argument is two-fold. First, he argues that Plaintiffs "consented" to his withdrawal because he "withdrew in this case based on a jointly stipulated withdrawal signed by" him and TCLG. *See* [Dkt. No. 236, at 7]. Second, Mr. Johnson incredibly claims that because Plaintiffs declined to retain him at his newly formed competing law practice, Plaintiffs chose to "effectively terminate or discharge" his services. *Id*. Neither scenario finds any support in the undisputed facts, or under Georgia law.

### A. *The So-Called "Consent" Defense*.

As for his first contention, it is amazing that Mr. Johnson claims Plaintiffs "consented" to his withdrawal simply because of the "jointly submitted withdrawal" paperwork, as the undisputed <u>facts</u> leading up to the filing of said Notice entirely deflate this argument. Indeed, what Mr. Johnson does not mention is that, upon his **voluntary** resignation, he did what any attorney practicing in federal court would do; *to wit*: he changed his CM/ECF and PACER profile information, thereby <u>automatically</u> resulting in (i) his receiving e-filings in this litigation to his new email account, and (ii) the docket of this case being perfunctorily changed to reflect his new credentials. The naturally created

issue, however, existed in that Mr. Johnson was <u>never</u> independently retained by Plaintiffs, and thus needed to be removed from the CM/ECF docket for this case.

Mr. Johnson thus presented to TCLG what he termed to be a "Substitution of Counsel," expressly suggesting that TCLG was *substituting* in as counsel in his stead. Rejecting this erroneous suggestion, TCLG revised the document to accurately note that Mr. Johnson was simply *withdrawing* from the record because he had "resigned from" his employment at TCLG. *See* **Exhibit 1.** Mr. Johnson eventually replied and suggested that Ms. Smilley – this Court's Judicial Assistant – recommended the substitution of counsel approach he proposed:

> From: Mark C. Johnson [mailto:MJ@JohnsonIPLegal.com]
> Sent: Thursday, April 27, 2017 12:32 PM
> To: Adam Goldman <agoldman@conceptlaw.com>
> Cc: Alex Brown <abrown@conceptlaw.com>; Scott Smiley <scott@conceptlaw.com>; Elizabeth Beavin <EBeavin@conceptlaw.com>
> Subject: RE: Motion for Approval of Withdrawal as Counsel
>
> Hi Adam,
>
> I have no problem with the GTL motion, so I will forward to o/c asap in accordance with the local rules.
>
> Regarding the revisions to the FF motion, ==I called Ms. Smilley before preparing the substitution pleading and she advised to file it as a Notice as long as there is current counsel staying on board, which is the case. There is actually a particular filing entry that she directed me to for this particular case.== Otherwise, you have to comply with Rule 83.1(E)'s numerous requirements before filing the motion. That said, I've modified my previous version in accordance with some of your changes, so please advise if it's good-to-go for filing.

*Id*. Not convinced that Ms. Smilley would knowingly advise counsel to file a document to suggest that a "substitution of counsel" was occurring when, in actuality, one was not, TCLG replied to Mr. Johnson as follows:

> From: Adam Goldman
> Sent: Thursday, April 27, 2017 1:04 PM
> To: Mark C. Johnson
> Cc: Alex Brown; Scott Smiley; Elizabeth Beavin
> Subject: RE: Motion for Approval of Withdrawal as Counsel
> Attachments: Notice of Substitution of Counsel_Revised.doc
>
> Thanks. I think its ok to file a "Notice" rather than a "Motion" but ==I think you would agree that it should not be a "substitution" of counsel. My brief revisions are attached.==

*Id*. Mr. Johnson nevertheless insisted Ms. Smiley directed it to be filed as he proposed:

> From: Mark C. Johnson [mailto:MJ@JohnsonIPLegal.com]
> Sent: Thursday, April 27, 2017 1:58 PM
> To: Adam Goldman <agoldman@conceptlaw.com>
> Cc: Alex Brown <abrown@conceptlaw.com>; Scott Smiley <scott@conceptlaw.com>; Elizabeth Beavin <EBeavin@conceptlaw.com>
> Subject: RE: Motion for Approval of Withdrawal as Counsel
>
> ==I could technically be substituted by current counsel of record, which was how Ms. Smiley characterized it and said that it should be filed.== My fear is that it will get rejected by the clerk and/or judge as not be filed with a designation that matches the title of the notice. Thoughts/concerns?

*Id*. [emphasis in highlighting]. Again, however, TCLG refused to file a pleading that would mislead this Court in any respect and, consequently, responded as follows:

> From: Adam Goldman
> Sent: Thursday, April 27, 2017 2:00 PM
> To: Mark C. Johnson
> Cc: Alex Brown; Scott Smiley; Elizabeth Beavin
> Subject: RE: Motion for Approval of Withdrawal as Counsel
>
> ==The concern is that there is no "substitution," so to title the notice that way would be misleading. We are already in the case. You are simply withdrawing.== If it gets kicked back, we can deal with it at that time. Perhaps the JA didn't appreciate the situation when she advised you.

*Id*. [emphasis in highlighting]. Realizing that TCLG would not capitulate into filing a misleading document suggesting that a 'Substitution of Counsel' was occurring,

4 | P a g e

Mr. Johnson finally agreed to the substance of the Withdrawal Notice proposed by TCLG, which was filed and reads, *in pertinent part*, as follows:

> **NOTICE OF WITHDRAWAL OF COUNSEL**
>
> IT IS HEREBY STIPULATED by and between the undersigned attorneys that Attorney MARK C. JOHNSON, former partner of THE CONCEPT LAW GROUP, P.A. ("==The Concept Law Group") (which firm has and continues to represent Plaintiffs==), and record attorney in the above-captioned case for Plaintiffs ==who resigned from The Concept Law Group==, shall be relieved of all further responsibility of representing Plaintiffs in this action and that all further notices, pleadings and correspondence in this matter be directed to Plaintiffs through its current counsel of record, The Concept Law Group.

[Dkt. No. 166, at 1] [emphasis in highlighting]. Plainly stated, the above filed Notice accurately advised this Court that Mr. Johnson resigned from TCLG, and should thus be removed from the docket. Nothing more. Mr. Johnson's sudden suggestion that Plaintiffs "consented" to his withdrawal simply because TCLG signed the above referenced Notice is of no moment, as TCLG only signed said pleading because of his April 27, 2017 representation that Ms. Smilley indicated that a Notice (in lieu of a "motion") was permissible provided that "current counsel [was] staying on board." Hence, TCLG's e-signature appearing directly beneath the designation of "*Counsel Currently Representing Plaintiffs*." *See id*. Indeed, the word "consent" does not even appear in the pleading, and it is simply titled "Notice of Withdrawal of Counsel." Against these facts, it is incredible that Mr. Johnson would attempt to use the "Notice

of Withdrawal" to suggest that it provides him with any pretextual basis upon which to prop his lien.

**B.** *<u>The "Termination or Discharge" Defense</u>*. Mr. Johnson's other newfound defense inconceivably claims that he was "effectively terminat[ed] or discharg[ed]" when Plaintiffs declined his post-resignation request to be independently retained as counsel in this case. [Dkt. No. 236, at 7]. *In his words*, Mr. Johnson explicitly asserts that "because Plaintiffs chose [T]CLG to continue to represent them in this case instead of [Mr. Johnson], [he] was effectively discharged and forced to withdrawal [sic] and should be entitled to enforce the Lien." *Id*. at 8. In other words, *Mr. Johnson claims that he was fired by a client who never retained him*. Such an absurd suggestion has no support in the facts or law, and the Rules of Professional Conduct cited by Mr. Johnson merely stand for the basic propositions that, (i) an attorney must withdraw upon being discharged, and (ii) an attorney who resigns from a law firm engaged by a client may advise the client of his/her departure and of the client's right to remain with the law firm representing its interest or to follow the departing attorney to his/her new firm. <u>None</u> of the cited Rules even remotely support the incredulous suggestion that a client's failure to retain the departing attorney following their unprovoked **voluntary** resignation could someway result in the departing attorney having lien rights against the innocent

client's file. Mr. Johnson's unsupported suggestion to the contrary should be rejected, and his lien stricken.

### III.  MR. JOHNSON'S MISGUIDED INTERPRETATION OF *Tolson v. Sistrunk*, 772 S.E.2d 416 (Ga. Ct. App. 2015)

Mr. Johnson's only other substantive argument in his Opposition Response begins with the following confusingly worded statement:

> Although [Mr. Johnson's] withdrawal was with Plaintiffs' consent **and/or** [Mr. Johnson] was effectively discharged by Plaintiffs, **or** caused to withdraw, because of Plaintiffs' desire to continue representation with [T]CLG, infra, the Lien is still enforceable even if [Mr. Johnson's] withdrawal was 'voluntary.'

[Dkt. No. 236, at 2] [emphasis added in bold, underline]. Mr. Johnson packs several *unexplored* scenarios into this single statement, but *none* actually fits the factual circumstances of this case. Indeed, as examined above, Plaintiffs never "consented" to Mr. Johnson's withdrawal, nor was Mr. Johnson "discharged" or "caused to withdraw" due to Plaintiffs' conduct. Rather, Mr. Johnson's withdrawal was unmistakably prompted by a single event; *to wit*: his independent decision to **voluntarily** resign from his employment at TCLG. [Dkt. No. 234-1, where Mr. Johnson wrote to his employer stating, "I think a separation is in the best interest for myself, both personally and professionally"]. Yet, Mr. Johnson suggests that the analysis of *Tolson v. Sistrunk*, 772 S.E.2d 416 (Ga. Ct. App. 2015) supports his lien, and disingenuously argues that TCLG has "strategically sidestepped" *Tolson* in its Motion to Strike. Both claims are entirely belied by the facts.

As an initial matter, despite the accusation of "strategically sidestepping" *Tolson*, Plaintiffs directly addressed and distinguished the factual circumstances of *Tolson* in its Motion. *See, e.g.,* [Dkt. No. 234, at 12-13, where Plaintiffs distinguish *Tolson* by explaining that "the clients [in *Tolson*] terminated the firm without good cause in favor of an associate who left the firm, and thus, the terminated firm was entitled to *quantum meruit*."]. Mr. Johnson ignores this discussion, and, more importantly, ignores the facts of *Tolson* cited by Plaintiffs to distinguish its holding from the instant case. Instead, *without any discussion whatsoever* of the facts or issues presented to the *Tolson* court, Mr. Johnson selectively quotes a passage from the case which recognizes, *in part*, that Georgia's lien law "applies non-restrictively to 'attorneys at law' and thus is broad enough to encompass those attorneys who conducted legal work for a client in anticipation of a lawsuit that ultimately is filed on behalf of the client by a different attorney." [Dkt. No. 236, at 3, *quoting Tolson*, 772 S.E.2d at 421]. While Mr. Johnson urges this Court to extrapolate a rule from this statement that would provide him footing to maintain his lien, *Tolson's* factual context is king, and demonstrates that its holding has absolutely no application to Mr. Johnson's pursuit.

In *Tolson*, a law firm was engaged to represent the client in a contingency matter. Upon engagement, the law firm assigned one of its attorneys to handle "the workup of the case," and the assigned attorney did so for nearly two years. 772

S.E.2d at 419. Thereafter, prior to a lawsuit being filed on behalf of the client, the employee resigned from the law firm. *Id.* The client then discharged the previously engaged law firm, and engaged the ex-employee at her new competing firm. *Id*. The ex-employee then filed suit for the client, and the discharged law firm filed a lien thereon, and moved to recover under such lien when the litigation concluded. *Id*. The court ultimately awarded the discharged law firm 5% as the *quantum meruit* value of services rendered in its pre-suit workup of the file, and the ex-employee appealed.

Germane to the quote improperly relied upon by Mr. Johnson *sub judice*, the ex-employee argued on appeal that the discharged law firm "was not entitled to file an attorney's lien **because** the firm performed only pre-suit legal work and was **discharged by [the client]** before the lawsuit was filed." *Id.* at 420 (emphasis added). This argument is <u>entirely irrelevant</u> to the case at bar. But, the contextual understanding of this issue presented to the *Tolson* court is important to understand. It was in the context of analyzing *this* narrow point that the court explained Georgia's lien law to be "broad enough" to encompass lawyers who were engaged on a file, but who were discharged by the client before litigation was commenced. *Id.* at 421. <u>Nothing</u> in *Tolson* extends its holding to relate to the *entirely different* factual scenario presented here, *i.e.,* where an attorney employed by the engaged law firm **voluntarily** resigns and is never thereafter independently engaged by the client.

Indeed, Mr. Johnson subtlety acknowledges this important factual distinction in the conclusion portion of his Response, where he remarkably concludes as follows:

> The substance of the withdrawal in this case is no different than what occurred in <u>Tolson</u>, i.e., after an attorney of a firm decided to leave the firm, the client chose the departing attorney (who would be [T]CLG in this scenario) over the firm (who would be [Mr. Johnson] in this scenario), and the firm was entitled to seek enforcement and recovery of its reasonable attorneys' fees under its lien.

[Dkt. No. 236, at 8]. It is simply unfathomable how Mr. Johnson could characterize TCLG as the "departing attorney," and equally profound that he could analogize himself to the discharged law firm in *Tolson*. This disingenuous effort is nothing more than Mr. Johnson's frivolous attempt to fit the proverbial square peg into the round hole. It simply cannot be done.

Unlike the unprovoked discharge of the law firm in *Tolson*, Mr. Johnson himself *directly caused* his withdrawal when he **voluntarily** resigned from his employment at TCLG. To be clear, it is <u>undisputed</u> that Mr. Johnson has <u>never</u> been independently engaged by Plaintiffs, and thus has <u>never</u> represented Plaintiffs outside of his role as a W-2 employee of TCLG. Nevertheless, Mr. Johnson still seeks *quantum meruit* following his **voluntary** resignation, arguing that he was somehow terminated when Plaintiffs declined to retain his newly formed competing firm, thereby giving him an alleged right to assert a lien. Neither *Tolson*, nor any other jurisprudence in Georgia, can be stretched to support this proposed twisted scenario urged by Mr. Johnson.

Indeed, although Mr. Johnson's lien seeks to invoke the "equitable" arm of this Court, principals of "equity" simply do not permit Mr. Johnson to maintain his lien under the present <u>undisputed</u> factual scenario. To clearly illustrate this point, if Mr. Johnson's scenario were permitted, innocent clients (*i.e.,* those whose actions had nothing to do with the ex-employee's decision to voluntarily resign) would necessarily be *forced* into one of the following situations:

- **Scenario #1**: The client could remain exclusively with the law firm who has handled the file from its inception, yet, under Mr. Johnson's proposed application of Georgia law, still face a lien by the ex-employee who **voluntarily** resigned without provocation. This would add many unprovoked burdens on the file, including the law firm's need to incur the unanticipated expense of re-staffing the file following the ex-employee's **voluntary** and unprovoked resignation, not to mention the prospect that the law firm would also face an uninvited fee reduction due to the ex-employee's lien. The client surely loses under this scenario, but the ex-employee who **voluntarily** resigned would be rewarded.

- **Scenario #2**: The client, not wanting to get involved with a disagreement between its engaged law firm and the law firm's ex-employee, could alternatively discharge the formerly engaged firm, and decline to independently engage the ex-employee. Under this scenario, the client would need to find replacement counsel, and thus enter into a new fee agreement with replacement counsel. But, under Mr. Johnson's proposed interpretation of Georgia law, the client would also face a lien from the previously engaged law firm (for being discharged without cause), <u>and</u> separately from the ex-employee (despite never having been independently engaged by the client). Once again, the client handedly loses under this scenario, but the ex-employee, who **voluntarily** and unexpectedly resigned, remains rewarded.

- **Scenario #3**: Because of the necessary result of Mr. Johnson's approach that would *automatically* entitle the ex-employee to a lien (despite the **voluntary** and unexpected nature of his/her resignation), the client could alternatively elect to retain the ex-employee to serve as co-counsel on the file, *but* would suddenly become obligated to pay two law firms a fee. The client clearly loses

under this scenario too, and it may even be forced to pay more, despite the likelihood that the forced retention of the ex-employee would negatively impact the representation of the client due to the natural friction that would exist between an ex-employer and its ex-employee who unexpectedly resigned. In the end, the client loses under this scenario, but the ex-employee, who **voluntarily** and unexpectedly resigned, remains rewarded.

- **Scenario #4**: The client could alternatively hire the ex-employee, and terminate the previously engaged law firm, upon which the law firm would be entitled to impose a lien because of its unprompted discharge. Indeed, this is the precise scenario presented in *Tolson*. Under this scenario, the client would have to address the lien filed by the formerly engaged law firm, *but* equity would demand and permit it because *the client caused* the situation when it discharged the law firm *without* cause.

Clearly, Georgia law simply does not support the first three scenarios, and Mr. Johnson simply cannot fit the facts of this case into the fourth. Mr. Johnson independently and **voluntarily** elected to resign from his employment, and thus voluntarily withdrew from representing Plaintiffs in this litigation. Georgia law commands that he has thus forfeited any entitlement he otherwise would have had to receive a fee.[1] *See generally Odom v. Hilton*, 124 S.E. 2d 415, 419 (Ga. Ct. App. 1962) (noting that, absent limited scenarios not present here, "an attorney who, without justifiable cause and without his client's consent, voluntarily abandons or withdraws from a case…*loses all right to compensation for services rendered*…") (emphasis added). Mr. Johnson's lien is thus invalid, and must be stricken.

---

[1] *See generally* [Dkt. No. 234, at 5-14, where Plaintiffs discuss Georgia law, and the law throughout the nation since 1908, undeniably holding that an attorney who voluntarily abandons a client's file forfeits all right s/he would otherwise have had to maintain a lien against his/her former client's file].

## IV. MISCELLANEOUS ARGUMENTS BY MR. JOHNSON

A. *<u>Suggestion that Plaintiffs "Intentionally" Mislead this Court.</u>* In an effort to criticize Plaintiffs, Mr. Johnson strongly rebukes Plaintiffs for what he claims to have been "Plaintiffs conveniently (or intentionally)" misleading of this Court by allegedly omitting language from the end of a quote in *Odom*. [Dkt. No. 236, at 5]. Here, Mr. Johnson claims Plaintiffs <u>*intentionally*</u> omitted the following language from the passage within *Odom* stating that an attorney "loses all right to compensation for services rendered" when he voluntarily withdraws before the end of the litigation: "…although in some cases the attorney has been allowed to recover on a [sic] quantum meruit notwithstanding his abandonment of his employment." [Dkt. No. 236, at 5]. This accusation is as shocking as it is disturbing. Plaintiffs indisputably included the subject language *in the beginning* <u>of the exact same sentence</u> that Mr. Johnson uses to recklessly accuse Plaintiffs of lying to this Court. To be clear, the complete sentence by Plaintiffs reads as follows:

> Specifically, <u>although an attorney may be entitled to recover in quantum meruit notwithstanding his voluntary abandonment of his client</u> (*i.e.*, such as in *Sosebee*, *supra*, where the clients' unethical conduct forced the withdrawal), the general rule in Georgia remains that 'an attorney who, without justifiable cause and without his client's consent, voluntarily abandons or withdraws from a case upon which he has entered before its termination and before he has fully performed the services required of him with respect thereto **loses all right to compensation for services rendered**…' *Odom*, 124 S.E. 2d at 419 (emphasis added).

[Dkt. No. 233, at 10-11] [emphasis added in underline; bold in original]. Mr. Johnson's accusations are demonstrably untrue and irresponsible. His efforts to mislead this Court should not be overlooked.

    B.    <u>*The Opening Paragraph*</u>. Finally, Mr. Johnson also misleadingly opens his Opposition as follows: "As a preliminary matter, Plaintiffs' response (DE 233) makes it clear they do not dispute [Mr. Johnson's] significant involvement and time spent in this case for Plaintiffs' benefit and with Plaintiffs' consent." [Dkt. No. 236, at 1]. Such an asserted "observation" by Mr. Johnson, which no doubt sought to prejudice Plaintiffs before this Court, is absolutely incorrect. Plaintiff's Motion literally states that "**<u>TCLG adamantly disputes</u>** the suggestion by Mr. Johnson that he was as instrumental on the file as he claims…" [Dkt. No. 234, at n.2] [emphasis added]. Plaintiffs explained, however, that "such measuring of one's worth of past performance is simply irrelevant inasmuch as [Mr. Johnson] **voluntarily** resigned and **voluntarily** withdrew **before** any contingency could be realized." *Id*. [emphasis in original]. It is striking that Mr. Johnson would open his brief in such a manner given Plaintiffs' clear statement to the contrary. Nevertheless, the "measuring" of Johnson's worth on the file is simply irrelevant in the pure legal analysis that presently lies before this Court. As such, Plaintiffs did not before, and will not now, take the bait to inadvertently create a non-existent factual issue on this presently <u>irrelevant</u> point.

## V.  CONCLUSION & REQUEST FOR FEES

The law as applied to the facts of this case unequivocally mandate the striking of Mr. Johnson lien. However, it is respectfully submitted that the Court should not stop at striking his Lien (and denying Mr. Johnson related Motion to Intervene). Rather, Mr. Johnson's filings are the quintessential definition of bad-faith, vexatious litigation, as the positions taken therein stand in direct contrast to centuries-old legal precedent, and contain several plainly obvious factual misrepresentations.  As such, in accordance with their initial Request in its Motion [Dkt. No. 234, at 17], Plaintiffs respectfully request an award of attorneys' fees and costs as a sanction pursuant to this Court's inherent authority. *See, e.g., Chambers v. NASCO, Inc.,* 501 U.S. 32, 51-53, (1991) (discussing the court's ability to assess attorneys' fees as a sanction for bad faith conduct); *F.D. Rich Co. Inc. v. United States ex rel. Indus. Lumber Co., Inc.,* 417 U.S. 116, 129 (1974) ("We have long recognized that attorneys' fees may be awarded to a successful party when his opponent has acted in bad faith, vexatiously, wantonly, or for oppressive reasons").

**WHEREFORE**, for the foregoing reasons, Plaintiffs respectfully request that this Court enter an Order striking Mr. Johnson's Charging Lien, and grant such other and further relief as this Court deems just and proper under the circumstances, including the remuneration of attorneys' fees and costs for being forced to prepare and file this Reply and the Response to Johnson's Intervention Request.

**Dated: October 23, 2019.**

        Respectfully submitted,

        The Concept Law Group, P.A.
        Attorneys for the Plaintiffs
        6400 North Andrews Avenue, Suite 500
        Fort Lauderdale, Florida 33309
        Telephone: (754) 300-1500
        Facsimile: (754) 300-1501

By:  /s/Alexander D. Brown, Esq.
      Alexander D. Brown, Esq.
      GA Bar No.: 902761
      ABrown@ConceptLaw.com
      Scott D. Smiley, Esq.
      Admitted *Pro Hac Vice*
      Scott@ConceptLaw.com

## CERTIFICATE UNDER ND Ga LR 7.1D

Pursuant to Northern District of Georgia Local Rule 7.1D, Plaintiffs' counsel hereby certifies that the above and foregoing is a computer document prepared in Times New Roman (14 point) font in accordance with Local Rule 5.1B.

By: /s/Alexander D. Brown, Esq.
Alexander D. Brown, Esq.
GA Bar No.: 902761
ABrown@ConceptLaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on **October 23, 2019**, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: /s/Alexander D. Brown, Esq.
Alexander D. Brown, Esq.
GA Bar No.: 902761
ABrown@ConceptLaw.com