IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| FLIP FACE U.S.A., LLC, a Florida Limited Liability Company, and FLIP FACE, INC., a Foreign Corporation,<br><br>    Plaintiffs,<br><br>v.<br><br>ALEXANDRIA MOULDING, INC., a Washington Corporation, and MOULURE ALEXANDRIA MOULDING, INC., a Canadian Corporation,<br><br>    Defendants. | CIVIL ACTION FILE<br><br>NO. 1:15-CV-883-MHC |

## ORDER

This case comes before the Court on the Motion to Intervene and Establish and Enforce Equitable Charging Lien Against Settlement Proceeds ("Mot. to Intervene") [Doc. 231] filed by Plaintiffs' former counsel, Mark C. Johnson ("Johnson"), and Plaintiffs' Motion to Strike Charging Lien [Doc. 234].

### I.     BACKGROUND

Johnson was a partner in The Concept Law Group ("CLG"), the law firm representing Plaintiffs at the time this case was filed on March 27, 2015. Mot. to Intervene at 2. Johnson states that he began working with Plaintiffs as a partner at

CLG as early as March 2014.  Id.  Johnson states that he worked on the above-styled case under an arrangement with CLG whereby he would be reimbursed for 46% of the billable hours he spent on this case in addition to 15% of any profit CLG received after Johnson's fees had been paid out.  Id. at 1-3.

Johnson contends that he was not compensated for over 800 hours of work he spent litigating this case.  Id.  It is undisputed that Plaintiffs never independently engaged Johnson for his services; Johnson was one of CLG's attorneys assigned to work on the case.  See Pls.' Resp. in Opp'n to Johnson's Mot. to Intervene and Mot. to Strike ("Pls.' Opp'n to the Mot. to Intervene") [Doc. 233] at 3.[1]  Although there is no evidence of a written agreement memorializing his arrangement with CLG, Johnson contends that "having a written agreement is not required to establish or enforce an equitable attorney fee lien . . . ."  Mot. to Intervene at 4; see also id. at 8 n.4 ("[P]ayment pursuant to this Motion does not sound in contract, but rather in equity.").[2]  Plaintiffs do not dispute the details of the alleged

---

[1] Plaintiffs have filed two documents that are identical: Plaintiffs' Motion to Strike Charging Lien [Doc. 234] and Plaintiffs' Opposition to the Motion to Intervene [Doc. 233].

[2] Johnson references a written contingency agreement between CLG and Plaintiffs whereby Plaintiffs agreed "to pay its attorneys a contingency fee of Forty Percent (40%) of the value of any Gross Recovery."  Mot. to Intervene at 4-5.  This

arrangement between Johnson and CLG, nor do they dispute that Johnson was not compensated for the time he spent working on this case. See Pls.' Opp'n to the Mot. to Intervene.

On February 22, 2017, Johnson resigned from CLG. See Notice of Asserting an Equitable Charging Lien ("Notice of Charging Lien") [Doc. 163] ("Undersigned counsel resigned from his role as a partner with The Concept Law Group, P.A. on February 22, 2017."); see also Pls.' Opp'n to the Mot. to Intervene at 2. On April 24, 2017, approximately two months after his resignation from CLG, Johnson asserted an equitable charging lien against the settlement proceeds recovered by Plaintiffs. Notice of Charging Lien. On April 28, 2017, Johnson filed a Notice of Withdrawal from this case, indicating that he resigned from CLG, "shall be relieved of all further responsibility of representing Plaintiffs in this action," and that all further pleadings and correspondence shall "be directed to Plaintiffs through its current counsel of record, [CLG]." Notice of Withdrawal of Counsel ("Notice of Johnson's Withdrawal") [Doc. 166].

Over two-and-a-half years after Johnson's resignation from CLG and withdrawal, on August 26, 2019, this case was administratively closed after the

---

agreement between CLG and Plaintiffs does not reference any separate arrangement between Johnson and CLG.

parties announced that they reached a settlement. Aug. 26, 2019, Order [Doc. 230]. On September 20, 2019, Johnson filed the present Motion to Intervene seeking to establish an equitable charging lien against settlement proceeds recovered by Plaintiffs. Mot. to Intervene. Johnson seeks an order requiring Plaintiffs' counsel to deposit 40% of the settlement proceeds into the Court's registry and setting this matter for an evidentiary hearing to evaluate the reasonable value of Johnson's services (not to exceed 40% of the Plaintiffs' portion of the settlement proceeds). Id. at 10.

## II.   LEGAL STANDARD

Rule 24 of the Federal Rules of Civil Procedure governs intervention, and provides for two methods upon which intervention may be granted: invention as of right and permissive intervention. FED. R. CIV. P. 24. A party may intervene as a matter of right if that party "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." FED. R. CIV. P. 24(a)(2). The Eleventh Circuit has articulated a four-part test for intervention by right under Rule 24, requiring a movant (1) to timely file an application to intervene; (2) have an interest relating to the property or transaction which is the

subject of the pending litigation; (3) be so situated that disposition of the action, as a practical matter, may impede or impair the movant's ability to protect that interest; and (4) demonstrate that movant's interest is not represented adequately by the existing parties to the suit.  Worlds v. Dep't of Health & Rehabilitative Servs., 929 F.2d 591, 593 (11th Cir. 1991) (citation omitted).

### III.  ANALYSIS

#### A.  The Nature of Johnson's Withdrawal

As a preliminary matter, the parties dispute the nature of Johnson's withdrawal in this case.  Plaintiffs argue that Johnson chose to resign from CLG over two years prior to the culmination of the present case, that Plaintiffs did not consent to the payment of Johnson's fees despite his early departure, and that Plaintiffs' conduct in no way necessitated or prompted his withdrawal.  Pls.' Opp'n to the Mot. to Intervene at 2-14.  Johnson argues that he either had Plaintiffs' consent to withdraw as counsel in this case before it was over or that his withdrawal was with "justifiable cause."  Johnson's Reply to Pls.' Resp. in Opp'n to Mot. to Intervene ("Johnson's Reply in Supp. of Mot. to Intervene") [Doc. 235] at 6-9.

1. **There is No Evidence That Plaintiffs Consented to Johnson's Withdrawal or to the Payment of Johnson's Fees After His Withdrawal.**

Johnson cites to the Notice of Withdrawal filed jointly by him and Plaintiffs' attorneys and argues that this document evidences the fact that Plaintiffs knew of Johnson's withdrawal and therefore consented to the same. Id. at 7. Johnson's Notice of Withdrawal provides as follows:

> IT IS HEREBY STIPULATED by and between the undersigned attorneys that Attorney MARK C. JOHNSON, former partner of THE CONCEPT LAW GROUP, P.A. ("The Concept Law Group") (which firm has and continues to represent Plaintiffs), and record attorney in the above-captioned case for Plaintiffs who resigned from The Concept Law Group, shall be relieved of all further responsibility of representing Plaintiffs in this action and that all further notices, pleadings and correspondence in this matter be directed to Plaintiffs through its current counsel of record, The Concept Law Group.

Notice of Johnson's Withdrawal. Johnson argues that based on this filing, "there can be no question that Plaintiffs knew of [Johnson's] withdrawal and consented to the same through their current counsel." The Notice of Johnson's Withdrawal was signed by both Johnson and a representative of CLG. Id. However, nothing in the document indicates that Plaintiffs consented to Johnson's withdrawal or to the payment of any of his fees upon his withdrawal.

## 2.     Johnson Did Not Have Justifiable Cause to Withdraw.

Johnson also argues that the fact that Plaintiffs were notified that Johnson was departing CLG and chose to have CLG continue to represent them, instead of abandoning their counsel and electing to have Johnson represent them independently, operated as an effective termination or discharge of Johnson. Johnson's Reply in Supp. of Mot. to Intervene at 7-9.  Therefore, he argues that he had justifiable cause to withdraw from this case.  Id. 0 Johnson also argues that the facts of this case are the same as those presented in Tolson v. Sistrunk, 332 Ga. App. 324 (2015), where the Georgia Court of Appeals determined that the trial court did not err when it held that the predecessor law firm which represented the client prior to the filing of a medical malpractice action was authorized to place a charging lien on the lawsuit filed by the successor law firm.  Id. (citing Tolson, 332 Ga. App. at 332).  The Court disagrees.

In Tolson, the client terminated the predecessor law firm, asked that the case be transferred to an associate who had resigned from the predecessor law firm, and the associate then obtained the service of the successor law firm who assumed the role of lead counsel.  Tolson, 332 Ga. App. at 326.  The Georgia Court of Appeals concluded that "under O.C.G.A. § 15-19-14(b), predecessor counsel who performed legal work for a client in developing a lawsuit is authorized to place a

7

lien on the suit when it is filed for the client by successor counsel." Id. at 332. This case does not involve the preparation of a case by one law firm which is entitled to place a lien on a lawsuit filed by a succeeding law firm. In this case, Johnson resigned from the law firm which represented and continued to represent Plaintiffs. Simply put, Tolson does not support Johnson's position that a client's decision to continue to be represented by its law firm instead of retaining an attorney who resigned from that firm effectively operates as a discharge of that attorney for purposes of applying the charging lien statute.

### B. Johnson's Right to Recover Attorney's Fees

Johnson argues that he should be permitted to intervene as a matter of right to enforce an attorney fee lien against any settlement proceeds Plaintiffs realized in this case. Mot. to Intervene at 6-8. Plaintiffs acknowledge the principle that an attorney could theoretically intervene in a case as a matter of right to assert an equitable lien in an attempt to collect attorney's fees and do not contest that Johnson was not compensated for the time he spent working on the present case. Pls.' Opp'n to the Mot. to Intervene at 5-17. However, Plaintiffs argue that Johnson does not have any right to attorney's fees in this case because the representation of Plaintiffs was contingent upon a successful outcome and Johnson voluntarily withdrew from representation years before that contingency occurred.

Id. Consequently, Plaintiffs argue that intervention should not be permitted because it would be futile. Id. at 14-17.

> No question exists that an attorney is entitled to a fee that has been earned. O.C.G.A. § 15-19-14. When a fee contract exists and the matter is brought to a successful conclusion by the attorney, the contract will govern the attorney's fee. But when such a contract exists for the payment of a contingent fee, the happening of the contingency is a condition precedent to the right of the attorney to recover for his services, and the precise event which was contemplated must happen.

Ellerin & Assocs. v. Brawley, 263 Ga. App. 860, 861 (2003) (citation and internal punctuation omitted); see also Metro. Life Ins. Co. v. Price, 878 F. Supp. 219, 220 (N.D. Ga. 1993) (citation omitted) (holding that an attorney's charging lien under O.C.G.A. § 15-19-14 arises upon the attorney's employment and is perfected by the ultimate recovery of the judgment for his client). However, if "the client prevents the contingency from happening, the attorney is entitled to reasonable attorney's fees for his services that have been rendered on behalf of the client. Thus, although prevented from recovering under the contract, the attorney still has a remedy in quantum meruit." Ellerin & Assocs., 263 Ga. App. at 862 (internal punctuation and citation omitted).

The question in this case is whether Johnson can recover in quantum meruit for work done prior to the happening of the contingency (the resolution of the case in Plaintiffs' favor) when he withdrew from representation. Although there does

9

not appear to be a case directly on point applying Georgia law, the Georgia Court of Appeals has ruled that an "attorney may lose his right to fees for . . . abandonment of his client's cause." Odom v. Hilton, 105 Ga. App. 286, 292 (1962) (citation omitted).

> According to the weight of authority, an attorney who, without justifiable cause and without his client's consent, voluntarily abandons or withdraws from a case upon which he has entered before its termination and before he has fully performed the services required of him with respect thereto loses all right to compensation for services rendered, although in some cases the attorney has been allowed to recover on a quantum meruit notwithstanding his abandonment of his employment.

Id. 105 Ga. App. at 292-93 (quotation and citation omitted).

Defendants cite Odom in support of their position that Johnson forfeited his rights to any fees related to work he performed on this case because he voluntarily withdrew in this case without justifiable cause or without Plaintiffs' consent. Pls.' Opp'n to the Mot. to Intervene at 5-6. Johnson contends that Plaintiffs mischaracterize the nature of his withdrawal but, assuming *arguendo* that he did withdraw voluntarily, argues that the holding in Odom recognizes that there are "some cases" in which an attorney can recover in quantum meruit notwithstanding the withdrawal. Johnson's Reply in Supp. of Mot. to Intervene at 5-6. However, Johnson does not explain the circumstances that must exist in "some cases" in

order to permit an attorney who voluntarily withdraws from a contingency case to recover in quantum meruit.

Moreover, Johnson has not cited a single case in which an attorney was permitted to recover based on work performed under a contingency agreement where that agreement did not specifically contemplate that the attorney would get paid for time spent if the attorney withdrew prior to the conclusion of the case.[3]  Id. None of the cases cited by Johnson involve an attorney who voluntarily withdrew from representation in a contingency case seeking to assert an attorney's lien.  See

---

[3] The only case cited by Johnson in which an attorney who voluntarily withdrew from a contingency agreement was permitted to recover in quantum meruit is distinguishable from this case.  In Brown v. Glob. Emp't Sols., Inc., 236 F. Supp. 3d 1299, 1307 (N.D. Ga. 2017), the court did not consider whether the withdrawing attorneys were entitled to assert a charging lien because that matter was deemed admitted after the client defaulted on the attorneys' claim pursuant to the charging lien.  Id. at 1307 ("[T]he sole issue for resolution at the evidentiary hearing was the amount of attorney's fees and expenses M & M is entitled to receive.").  Further, the attorneys seeking to recover fees in Brown withdrew from the case because of "irreconcilable differences" between the attorneys and their client related to the choice of mediators.  See id. at 1301.  In contrast, there is no allegation in this case that Johnson's withdrawal was because of Plaintiffs' actions. Additionally, although the attorneys were not seeking to enforce it, the engagement agreement between the attorneys and their former client in Brown specifically contemplated that the client would pay "fees and expenses in the event of termination or withdrawal."  Id. at 1301 n.7; see also id. at 1308 n.24 ("Brown agreed that if the attorney-client relationship was terminated prior to conclusion of the case, she would pay M & M an hourly fee for services rendered.").  There is no allegation that the agreement between Plaintiffs and CLG had a similar provision.

11

Albert v. Am. Family Ins. Co., No. 1:14-CV-1112-ELR-JKL, 2017 WL 5380588, at *1 (N.D. Ga. Jan. 9, 2017), aff'd in part, appeal dismissed in part, 739 F. App'x 607, 611 (11th Cir. 2018) (involving the appropriateness of establishing a charging lien on settlement proceeds acquired after client terminated lawyer without cause); Eichholz Law Firm, P.C. v. Tate Law Grp., LLC, 310 Ga. App. 848, 853 (2011) (holding that the law firm that was terminated prior to the occurrence under a contingency agreement without cause could not recover under that agreement, but could seek to recover in quantum meruit); Kirschner & Venker, P.C. v. Taylor & Martino, P.C., 277 Ga. App. 512, 513 (2006) (holding that "[s]ince [the fee-seeking law firm] was fired before any settlement was reached in this case, and no express agreement existed through which it could obtain fees in the event of termination, it was only entitled to recover a fee in quantum meruit based on the reasonable value of the services that it had rendered to the client before being fired.").

In responding to Plaintiffs' argument that Johnson's voluntary withdrawal precludes his ability to assert a charging lien, Johnson relies exclusively on Tolson for the proposition that "[n]othing in the statutory language of O.C.G.A.§ 15-19-14 prevents a lien from being enforced by an attorney who 'voluntarily' withdraws on a case." Johnson's Reply in Supp. of Mot. to Intervene at 3. However, Tolson is

distinguishable because the law firm seeking to assert a charging lien in Tolson did not voluntarily withdraw from representation; in fact, the client terminated the relationship prior to the filing of any lawsuit.  See Tolson, 332 Ga. App. at 326 ("Bryant decided that he wanted her rather than the Cochran Firm, to continue to represent him.").  This Court finds that Johnson's actions in voluntarily withdrawing from the case before the contingency occurred and without justifiable cause, forfeits his right to compensation for services rendered.  See Odom, 105 Ga. App. at 293; see also Tolson, 332 Ga. App. at 329 (quotation and citation omitted) ("O.C.G.A. § 15-19-14 is in derogation of the common law, and is to be strictly construed.").[4]

Normally, "intervention is generally recognized as an appropriate means of pursuing a lien on the proceeds of litigation in which an attorney has participated." N. Am. Med. Corp. v. Axiom Worldwide, Inc., No. 1:06-CV-1678-JEC, 2011 WL 4373977, at *4 (N.D. Ga. Sept. 19, 2011), vacated in part on other grounds, No. 1:06-CV-1678-CCH, 2012 WL 12950085 (N.D. Ga. Feb. 3, 2012) (citing FED. R.

---

[4] In this case it appears that Johnson's remedy, if any there be, lies with an action against CLG to recover money owed to him under his compensation agreement or any other agreement he may have made with CLG with respect to potential fees that could be recovered in this case subsequent to Johnson leaving the law firm. An attorney cannot pursue a lien under O.C.G.A. § 15-19-14 for unpaid salary because the lien statute is intended to aid in the recovery of attorney's fees, not employee compensation. See O.C.G.A. § 15-19-14.

Civ. P. 24(a)(2) (permitting intervention of right where a person "claims an interest relating to the property or transaction that is the subject of the action") and Sweeney v. Athens Reg'l Med. Ctr., 917 F.2d 1560, 1565 (11th Cir.1990) (permitting intervention of right under Rule 24 is available to resolve a dispute concerning the proper allocation of settlement funds)).  However, as shown above, Johnson does not have a right to any of the settlement proceeds at issue in this case.

### IV. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Mark C. Johnson's Motion to Intervene and Establish and Enforce Equitable Charging Lien Against Settlement Proceeds [Doc. 231] is **DENIED**, and Plaintiffs' Motion to Strike Charging Lien [Doc. 234] is **DENIED AS MOOT**.

**IT IS SO ORDERED** this 8th day of May, 2020.

_____
MARK H. COHEN
United States District Judge